UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC<br><br>Plaintiff,<br><br>v.<br><br>EVERETT HUNTER, et al.,<br><br>Defendants. | No. 2:22-cv-1059-JAM-KJN<br><br>FINDINGS AND RECOMMENDATIONS<br><br>(ECF No. 31) |

Presently pending before the court is plaintiff's G & G Closed Circuit Events, LLC's motion for default judgment against defendants Everett Hunter, Port City Sports Bar and Grill, and Port City Sports Bar and Grill, LLC.[1] (ECF No. 31.) To date, defendants have not opposed plaintiff's motion or otherwise made an appearance in this action. (ECF Nos. 21, 22, 26, 27.)

The undersigned recommends plaintiff's motion for default judgment be GRANTED IN PART, and that plaintiff be awarded final judgment in the total amount of $6,900.00.

///
///
///
///

---

[1] This motion is referred to the undersigned by Local Rule 302(c)(19) for the entry of findings and recommendations. See 28 U.S.C. § 636(b)(1)(B).

1

## I. BACKGROUND[2]

G & G Closed Circuit Events, LLC brought an action against defendants Everett Hunter, Port City Sports Bar and Grill, and Port City Sports Bar and Grill, LLC for misappropriation of a boxing event (Manny Pacquiao versus Yordenis Ugas) that was telecast nationwide on Saturday, August 21, 2021 (hereinafter the "Program"). (ECF No. 17.) Plaintiff alleges defendants unlawfully intercepted, received, and thereafter exhibited the Program at the time of its transmission at the address of the commercial establishment operated by defendants, located at 222 N. El Dorado St., Ste. J, Stockton, CA 95202. (Id. at 7.) Defendants required a $10.00 cover charge from their patrons on the night of the Program. (Id. at 6.) Defendants' actions were observed by investigator Gary Gravelyn, who was present at the commercial establishment on the evening the Program was airing. (ECF No. 31 at ¶¶ 10, 19, and 29-31.)

Plaintiff's claims against defendants arise out of Title 47 U.S.C. §§ 605 and 553, as well as state law claims for Conversion and violation of California Business and Professions Code § 17200. (ECF No. 17.) Defendants Port City and Hunter were served with process but failed to answer, so the clerk of the court entered default against them. (ECF Nos. 21, 22, 26, 27.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment is within the district court's discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

In making a default judgment determination, the court considers the following factors:

1. the possibility of prejudice to the plaintiff;
2. the merits of plaintiff's substantive claim and the sufficiency of the complaint;
3. the sum of money at stake in the action;
4. the possibility of a dispute concerning material facts;

---

[2] All facts derive from the first amended complaint unless otherwise noted. (See ECF No. 17.)

2

> 5. whether the default was due to excusable neglect, and
> 6. the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law). A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. Geddes, 559 F.2d at 560.

## III. DISCUSSION

### A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors

The undersigned finds the Eitel factors weigh in favor of the entry of a default judgment against defendants and recommends default judgment be entered with respect to liability.

1. Possibility of Prejudice to the Plaintiff

The first Eitel factor considers whether plaintiff would suffer prejudice if default judgment were not entered, as prejudice to a plaintiff weighs in favor of a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff was unsuccessful in its attempts to press its claims against defendants Port City and Hunter for their alleged piracy and airing of the Program. Defendants have been silent in this matter, so plaintiff would be left without any other recourse against defendants should default not be entered. Accordingly, the first Eitel factor favors the entry of default judgment.

2. <u>Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint</u>

The second and third factors (the merits of the substantive claims and the sufficiency of the complaint) are considered in tandem, due to the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175.

Based on the foregoing analysis, the court finds these factors weigh in favor of entering default judgment against defendants.

**Title 47 U.S.C. § 605**

The Federal Communications Act prohibits commercial establishments from intercepting and exhibiting satellite cable programming. See 47 U.S.C. § 605; see also <u>DirecTV, Inc. v. Webb</u>, 545 F.3d 837, 844 (9th Cir. 2008).

Here, plaintiff's complaint alleges that plaintiff owned the exclusive rights to the Program (ECF No. 17 at 6) and that defendants—who were not plaintiff's sub-licensees—intercepted, received, published, divulged, displayed, and exhibited the Program to their patrons at the time of its transmission in willful violation of § 605. (ECF No. 17 at 7.) Taking these allegations as true, the court concludes that plaintiff has sufficiently pled a violation of 47 U.S.C § 605.

While the above is sufficient to hold Port City Sports Bar and Grill liable, whether Hunter may be held liable for the violation of § 605 in his individual capacity must be examined. A defendant is vicariously liable and therefore jointly liable for a violation of § 605 if he "(1) . . . had a right and ability to supervise the infringing activities and (2) had an obvious and direct [] financial interest in those activities." <u>J & J Sports Prods., Inc. v. Walia</u>, 2011 WL 902245 at *3 (N.D. Cal. Mar. 14, 2011). Plaintiff alleges that Hunter was a member or manager of the limited liability company Port City Sports Bar and Grill and therefore had the right, ability, and obligation to supervise the activities of the establishment on the night of the Program at issue. (ECF No. 17 at 3-4.) Plaintiff further alleges that Hunter directed or permitted the employees of Port City Sports Bar and Grill to unlawfully intercept, receive, and publish plaintiff's Program. (<u>Id.</u>) Finally, plaintiff alleges that as a member/manager of the LLC, Hunter had a direct financial interest in the activities of Port City Sports Bar and Grill and that the broadcast of plaintiff's

Program, as supervised by him, resulted in increased profits for Port City Sports Bar and Grill. (Id. at 5.) Taking these well-pleaded allegations as true, the undersigned finds them sufficient to establish vicarious liability for Hunter. See, e.g., G & G Closed Cir. Events, LLC v. Pacheco, 2020 WL 13469799, at *2 (S.D. Cal. Jan. 7, 2020) (applying the above standard to hold individual owner/defendant vicariously liable for a 47 U.S.C. § 605 violation).

### Title 47 U.S.C § 553

The Cable & Television Consumer Protection and Competition Act, 47 U.S.C. § 553(a) prohibits any person from intercepting or receiving or assisting "in intercepting any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553.

The complaint alleges that plaintiff owned the rights to the Program and defendants intercepted, received, published, divulged, displayed, and/or exhibited the Program in violation of § 553.2. (ECF No. 17 at 1-2, 6, 8-9.) Taking these allegations as true, the court concludes that plaintiff has sufficiently pleaded a violation of 47 U.S.C § 553 against defendants. See, e.g., Innovative Sports Mgmt. v. Gutierrez, 2023 U.S. Dist. LEXIS 109006, at *8 (N.D. Cal. June 23, 2023) (applying the above standard to hold individual defendant, who was a manager, vicariously liable for a violation of 47 U.S.C. § 553).

### Conversion

Conversion requires ownership or a right to possession of property, wrongful disposition of the property right, and damages. G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, 906 (1992) (citing Tyrone Pacific Int'l, Inc. v. MV Eurychili, 658 F.2d 664, 666 (9th Cir. 1981)). It is alleged that by the acts of interception, reception, publication, divulgence, display, and/or exhibition of the Program at Port City Sports Bar and Grill, defendants tortuously obtained possession of the broadcast and wrongfully converted it for their own use and benefit without paying plaintiff the commercial licensing fee that it was rightfully entitled to receive from them. (ECF No. 17 at 10.) Taking these allegations as true, the court concludes plaintiff has sufficiently alleged a conversion claim.

///

**California Business and Professions Code**

California Business and Professions Code § 17200 includes any unlawful, unfair or fraudulent business act or practice. Plaintiff alleges defendants and their agents, servants, workmen or employees broadcasted the Program in a commercial establishment for financial gain to the detriment and injury of plaintiff and its business enterprise and constituting unlawful, unfair and deceptive trade practices. (ECF No. 17 at 11-12.) Taking these allegations as true, the court concludes that plaintiff sufficiently alleged a § 17200 violation. See, e.g., Pacheco, 2020 WL 13469799, at *3 (S.D. Cal. Jan. 7, 2020) (finding a § 17200 violation part and parcel with plaintiff's claims for signal piracy and conversion).

      3. <u>Sum of Money at Stake</u>

In weighing the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct." PepsiCo, Inc., 238 F.Supp.2d at 1176-77. This factor weighs against default judgment when a large sum of money is at stake. Eitel, 782 F. 2d. at 1472. Here, plaintiff seeks $5,200 in statutory damages and $25,000 in enhanced damages under Section 605. (ECF No. 31 at 3.) Plaintiff also seeks $1,300 in compensatory damages for conversion, an amount equal to the sublicensing fee. (Id.) The court finds this is a moderate sum of money that does not weigh against default judgment. Further, courts are granted discretion in awarding damages, and the undersigned recommends a reduced amount, as discussed below. As such, this factor does not weigh against default judgment.

      4. <u>The Possibility of a Dispute Concerning Material Facts</u>

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations and documentation supporting its claims. The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, and thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); PepsiCo, Inc., 238 F. Supp. 2d at 1177. In addition to the allegations in the complaint, plaintiff has provided a

signed copy of an investigator's affidavit as well as its closed-circuit television license agreement, all of which attest to plaintiff's claims. (See ECF No. 31 at 29-31, 49, 79.) The undersigned finds this factor favors the entry of a default judgment.

       5. <u>Whether the Default was Due to Excusable Neglect</u>

Upon review of the record before the court, the undersigned finds the default was not the result of excusable neglect. <u>Pepsi Co, Inc.</u>, 238 F. Supp. 2d at 1177. Defendants Port City and Hunter were properly served with the summons and complaint but failed to respond. (<u>See</u> ECF Nos. 21 and 22.) Plaintiff also served defendants with the motion for default judgment after the court ordered this service and opportunity to respond to the default judgment motion. (ECF Nos. 31 at 76-79; 33). Accordingly, there is no indication defendants' default resulted from excusable neglect; this factor favors the entry of a default judgment.

       6. <u>Policy of Deciding Cases on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>e.g.</u>, <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Here, although the undersigned is cognizant of the policy in favor of decisions on the merits—that policy is unavailable here because defendants have not responded. This factor does not weigh against entry of default judgment.

**B. Relief Sought**

Pursuant to the above analysis, the <u>Eitel</u> factors weigh in favor of entering default on liability against the defendants.

Plaintiff asks for $5,200 in statutory damages plus an additional $25,000 in "enhanced" statutory damages, for a total award of $30,200 under 47 U.S.C § 605. In addition, plaintiff seeks $1,300 in compensatory damages for its conversion claim, along with an award of attorneys' fees and costs. (<u>See</u> ECF No. 31 at 3.)

Each violation of Section 605 allows a plaintiff to recover an award of statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C.

§ 605(e)(3)(C)(i)(II). The statute further provides that enhanced damages may be awarded up to $100,000, where the court finds that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. 605(e)(3)(C)(ii). Courts maintain their discretion in determining the appropriate amount of damages. Kingvision Pay-Per-View, Ltd. v. Backman, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000).

    1. Statutory Damages

Plaintiff's motion for default judgment requests $5,200 in statutory damages. (ECF No. 31 at 3.) Regarding damages for signal piracy, courts often consider the following factors when determining statutory damages: promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, a cover charge, the number and size of televisions used for the broadcast, and whether a premium was charged on food and drink. See, e.g., Integrated Sports Media, Inc. v. Naranjo, 2010 WL 3171182, at *4 (E.D. Cal. Aug. 11, 2010); G. v. La Placita RM Rest. Inc., 2023 U.S. Dist. LEXIS 137940, at *9 (E.D. Cal. Aug. 7, 2023). Courts also consider whether the defendants are repeat offenders. Backman, 102 F. Supp. 2d at 1198. Courts weigh all factors, awarding statutory damages "according to the totality of the relevant circumstances." G & G Closed Cir. Events, LLC v. Olvera, 2020 WL 1503376, at *3 (E.D. Cal. Mar. 30, 2020).

Here, plaintiff submitted evidence establishing that there were between thirty to thirty-five patrons watching the Program on one sixty-inch television at the location of Port City Sports Bar and Grill, which has an approximate capacity of fifty people; additionally, patrons paid a $10.00 cover charge to enter the establishment to view the Program. (ECF No. 31 at 19-20, 29-31.) Conversely, plaintiff provided no evidence that defendants imposed a premium charge on food and drinks, that the defendants engaged in signal piracy on previous occasions, or that defendants advertised the Program to attract more patrons.

Under these circumstances, the undersigned recommends an award of statutory damages in the amount of $2,600—twice the amount defendants would have paid for a license. The amount is proportional to the violation, while serving as a deterrence of future violations as Section 605 intended. In addition, it aligns with statutory damages awarded in similar

circumstances in this district.  See, e.g., G & G Closed Circuit Events, LLC v. Barajas-Quijada, 2020 WL 64782, at *5 (E.D. Cal. Jan. 7, 2020) (recommending "award of $5,600—which is twice the cost of a proper sublicense" where 54 patrons were present, first-time-offender defendant advertised, and collected a cover charge); J & J Sports Productions, Inc. v. Carranza, 2015 WL 12681674, at *2 (E.D. Cal. Dec. 29, 2015) ("[P]laintiff has not demonstrated any damages greater than the loss of the $1,400 licensing fee and the facts do not warrant statutory damages in excess of $1,400"); La Placita RM Rest. Inc., 2023 U.S. Dist. LEXIS 137940, at *9 (awarding $3,000 in statutory damages without enhanced damages where defendant advertised, and the program was shown on a single sixty-inch television); Naranjo, 2010 WL 3171182, at *6 (awarding $1,000 in statutory damages without enhanced damages where the capacity of the restaurant was forty, the number present ranged from 12 to 20, no admission fee was charged, and the program was displayed on a single television).

   2. Enhanced Damages for § 605 Claim

  Plaintiff seeks enhanced damages in the amount of $25,000.  (ECF No. 31 at 3.)  Plaintiff asserts defendants' unlawful actions were committed willfully and for financial gain.  (ECF No. 17 at 7.)  While it is true that the complaint's factual allegations are taken as true, the same cannot be said for allegations relating to damages.  Geddes, 559 F.2d at 560 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

  Here, plaintiff's only evidence in support of enhanced damages is a cover charge of $10.00.  (ECF No. 31 at 19-20, 29-31.)  This court has observed that "[a]n award of enhanced damages is appropriate where the defendant imposes a cover charge or admission fee."  J & J Sports Prods., Inc. v. Mendoza, 2015 WL 5009000, at *4 (E.D. Cal. Aug. 20, 2015) (awarding $10,000 in enhanced damages where defendants advertised the programming and required a cover charge).  However, there is no evidence indicating that defendants advertised the Program, that food or drink prices were increased because of the broadcasting of the Program, or that the number of the patrons was larger than usual or attributable to the playing of the broadcast.  See, e.g., Joe Hand Promotions, Inc. v. Burleson, 2011 WL 4905631, at *5 (E.D. Cal. Oct. 14, 2011)

(awarding $3,000 in enhanced damages where patrons were told they could either "pay a [$5] cover charge to watch the fight or order a plate of 'all you can eat wings for $11.99'").

Accordingly, the court finds it appropriate to award a reduced amount of $3,000 in enhanced statutory damages under 42 U.S.C § 605(e)(3)(C)(ii), for a total statutory award of $5,600 under 47 U.S.C § 605.

### 3. Damages for Conversion

Plaintiff requests $1,300 in damages for its conversion claim. Under California Civil Code § 3336, a plaintiff in action for conversion may recover the value of the property at the time of conversion. Kruger v. Bank of America, 145 Cal. App. 3d 204, 215 (1983); Cal. Civ. Code. § 3336. An establishment the size of Port City would have been required to pay $1,300 to obtain a commercial sublicense to broadcast the Program. (ECF No. 31 at 62.) Accordingly, the court concludes that an award of $1,300 in compensatory damages for the conversion claim is appropriate.

### 4. Attorneys' Fees and Costs

Title 47 U.S.C. § 605 mandates an award of costs and attorneys' fees to an aggrieved party. Specifically, the section states that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff requests fourteen (14) days from the entry of judgment to submit its motion for costs and attorneys' fees.

The court finds the request appropriate and recommends plaintiff be allowed to submit such request within fourteen (14) days of entry of judgment.

## RECOMMENDATIONS

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment be GRANTED IN PART, with reductions in the total sought damages;
2. Judgment be entered in favor of plaintiff and against defendants in the total amount of $6,900.00, as follows:
   a. $2,600.00 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

      b.  $3,000.00 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

      c.  $1,300.00 in damages for plaintiff's state tort claim for conversion; and

3. Plaintiff be ordered to submit a motion for costs and attorneys' fees within fourteen (14) days from the date of entry of judgment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7)** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: October 20, 2023

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

SD/AZ, winn.1140

11